UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 26MJ101 (JNE/DLM) |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MR. FRANKLIN'S MOTION TO |
| | ) | DISMISS FOR OUTRAGEOUS |
| JOSEPH FRANKLIN, | ) | GOVERNMENT CONDUCT AND FOR |
| | ) | AN EVIDENTIARY HEARING |
| Defendant. | ) | |

Joseph Franklin, through his attorney, Siri Carlson McDowell, moves to dismiss the misdemeanor information pursuant to the Due Process protections of the Fifth Amendment and Federal Rule of Criminal Procedure 12(b)(3),[1] as government actions in this case have violated Mr. Franklin's constitutional rights and amount to outrageous government conduct.

## FACTS[2]

On January 13, 2026, several vehicles began to follow a unmarked, white minivan that contained four Border Patrol agents (BPA). The BPAs recorded the vehicles using body worn camera (BWC). The BPAs can be heard discussing where they can pull over to confront the vehicles following them. Mr. Franklin's SUV passed the minivan and drove in front of it, briefly applying his brakes. The BPA driving then turned down a side street, and Mr. Franklin turned his car to follow the minivan. Once on the side street, the BPA

---

[1] "Outrageous government conduct claims involve alleged defects in the institution of the prosecution," and must be raised as a pretrial motion. *United States v. Warren*, 788 F.3d 805, 811 (8th Cir. 2015) (cleaned up).

[2] These facts are taken from the body worn camera footage provided to defense by the government.

1

making the recording (BPA 1) directed the driver to stop the vehicle. The driver hesitated, then braked abruptly on a narrow, ice-covered street, "brake-checking" Mr. Franklin and causing Mr. Franklin's SUV to hit the minivan.

After causing a fender-bender, the agents got out of their vehicle and ran toward Mr. Franklin in his SUV, which he was parking on the side of the street. BPA 1 called to his fellow agents to make make sure they have their batons to confront Mr. Franklin. As Mr. Franklin attempted to park his car, the agents shouted expletive-laden commands at him as they move toward the SUV.  BPA 1 directed his fellow agent to break Mr. Franklin's window.[3] The two agents who approached Mr. Franklin's car draw their guns and pointed them at Mr. Franklin, prompting bystanders to beg agents to not shoot him. The agents continued to shout commands to Mr. Franklin, which he obeyed. Mr. Franklin complied and did not resist at all as the agents handcuffed and arrested him and placed him in the back of the minivan.

In their subsequent reports to Homeland Security Investigators, the BPAs failed to mention that they caused they accident by breaking abruptly, and instead described Mr. Franklin as driving aggressively and hitting them with his SUV. However, while in the minivan with Mr. Franklin after his arrest, BPA 1 told Mr. Franklin that he gave them a "love tap" and "not much" damage happened.[4] After Mr. Franklin responded that he didn't intend for the contact to happen, BPA 1 began to tell Mr. Franklin what happened in their

---

[3] The agent approached the car with his baton raised but did not break the window.
[4] BPA 1 later told Homeland Security Investigators that there was no damage.

minivan before the accident, then catches himself and told Mr. Franklin he was driving aggressively.

On January 29, 2026, the sworn affidavit to support the issuance of a felony criminal complaint and arrest warrant for Mr. Franklin described Mr. Franklin as causing "a head-on collision with a vehicle driving towards him in the opposite direction," ECF 1 at 5-6," before he continued to follow "the BPAs' vehicle, moving ever closer until he eventually rammed into the back of it." ECF 1 at 8. The affidavit went on to state that Mr. Franklin "attempted to accelerate forward near where a BPA 2 was walking—albeit unsuccessfully because the road was icy." ECF 1 at 9.

In a Facebook post on February 4, 2026, the day after Mr. Franklin's first appearance in this case, the Department of Homeland Security posted that "violent agitators" had been arrested and published photos of 10 people who had been arrested, including Mr. Franklin, whose photo appears on the first page of the post. *See* Defense Ex. A. In this photo, Mr. Franklin is facing forward flanked by two people with their backs to the camera, wearing jackets that appear to say "FBI" and "Police HSI." *Id.* Clicking on Mr. Franklin's photo expands the image, revealing text superimposed over the bottom of the image: "Joseph Franklin, *Arrested*: Assault (Ramming)." *Id.*

## APPLICABLE LAW

Government misconduct violates the Due Process clause and warrants dismissal when it "shocks the conscience of the court." *United States v. Horton*, 756 F.3d 569, 576 (8th Cir. 2014). Outrageous government conduct can foreclose criminal charges "where law enforcement officers have sought to create crimes in order to lure a defendant into

illegal activity" that the person "was not otherwise ready and willing to commit." *United States v. Boone*, 437 F.3d 829, 842 (8th Cir. 2006). The court should hold an evidentiary hearing when a defendant raises "specific facts that are sufficient to raise a significant doubt about the propriety of the government's actions." *See United States v. Valona*, 834 F.2d 1334, 1340 (7th Cir. 1987) (cited in *United States v. Kelley*, 152 F.3d 881, 885 (8th Cir. 1998).

## ARGUMENT

The government has engaged in conscience-shocking conduct in Mr. Franklin's case and it warrants dismissal.

First, Border Patrol agents caused the accident in this case. They abruptly stopped their vehicle on a narrow, ice-covered street, causing Mr. Franklin's SUV to hit their minivan. After causing a fender bender that resulted in no damage, the agents barreled out of their vehicle, with batons and guns drawn, to confront Mr. Franklin as he parked his car on the side of the street. The Border Patrol agents used the accident as pretext to arrest Mr. Franklin and used excessive force in doing so, as evidence by the bystanders begging the Border Patrol Agents not to shoot Mr. Franklin.

The outrageousness of the government's conduct is further evidence by the agents' conduct after Mr. Franklin's arrest. BPA 1 characterizes the contact between the vehicle as a "love tap" that cause minimal damage. When Mr. Franklin states in response that he did not intend for the tap to happen, BPA 1 seems to begin to explain what really cause the accident. Then, realizing that this would undermine the arrest, he quickly switches to blaming Mr. Franklin for driving aggressively.

The government further expanded on these falsehoods in the affidavit used by the government to obtain a felony arrest warrant for Mr. Franklin. ECF 1. According to the BWC footage and BPA 1's own description of the agent-cause accident as a "love tap," neither the "head-on collision" nor the "ramming" happened. The BWC footage is clear that Mr. Franklin had reversed away from the agents' minivan and was parking his car when the agents approached with baton and gun drawn. These falsehoods, sworn under oath, resulted in a magistrate judge signing a felony arrest warrant for Mr. Franklin on January 29, 2026. Mr. Franklin turned himself in on the warrant and suffered the subsequent intrusion on his bodily autonomy that accompanies any physical arrest.

The government doubled down on its lies about Mr. Franklin when it published an inappropriate and unlawful "trophy" photo of Mr. Franklin on Facebook. The February 4, 2026, post by the Department of Homeland Security describes Mr. Franklin as a violent agitator and the description under his photo of "Assault (Ramming)" suggests that he is engaged in violent, assaultive conduct by Mr. Franklin which did not occur. Further, the Facebook post makes no reference to the fact the Mr. Franklin is presumed to be innocent, prejudicing Mr. Franklin.

The agent-created accident and arresting Mr. Franklin for it, the excessive force used to arrest Mr. Franklin, the lies about Mr. Franklin's conduct in sworn filings, and the prejudicial publicity stunt are evidence that outrageous government conduct has occurred. Mr. Franklin requests an evidentiary hearing to further develop this record. Mr. Franklin requests the opportunity to further brief this motion once the factual record has been developed.

Dated: March 16, 2026                    Respectfully submitted,

                                         *s/ Siri Carlson McDowell*

                                         SIRI CARLSON MCDOWELL
                                         Attorney ID No.  0401693
                                         Attorney for Mr. Franklin
                                         107 U.S. Courthouse
                                         300 South Fourth Street
                                         Minneapolis, MN 55415

6