UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 26MJ101 (JNE/DLM) |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MR. FRANKLIN'S MOTION TO |
| | ) | SUPPRESS OBSERVATIONS AND |
| JOSEPH FRANKLIN, | ) | STATEMENT AND FOR AN |
| | ) | EVIDENTIARY HEARING |
| Defendant. | ) | |

Joseph Franklin, through his attorney, Siri Carlson McDowell, moves the Court

pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure to suppress any

observations made by Border Patrol agents and any statements made by Mr. Franklin after

Border Patrol agents unlawfully seized Mr. Franklin on January 13, 2026. He also moves

the Court to suppress his statements to Border Patrol agents made after custodial

interrogation without benefit of *Miranda* warnings.

## FACTS[1]

On January 13, 2026, several vehicles began to follow an unmarked, white minivan

that contained four Border Patrol agents (BPA). The BPAs recorded the vehicles using

body worn camera (BWC). On the BWC, the BPAs can be heard discussing where they

can pull over to confront the vehicles following them. Mr. Franklin's SUV passed the

minivan and proceeded to drive in front of it, briefly applying his brakes. The BPA driving

then turned down a side street, and Mr. Franklin turned his car to follow the minivan. Once

---

[1] These facts are taken from the body worn camera footage provided to defense by the government.

on the side street, the BPA making the recording (BPA 1) directed the driver to stop the vehicle. The driver hesitated, then braked abruptly on a narrow, ice-covered street, "brake-checking" Mr. Franklin and causing Mr. Franklin's SUV to hit the minivan.

After causing a fender-bender, the agents got out of their vehicle and ran toward Mr. Franklin in his SUV, which he was parking on the side of the street. BPA 1 called to his fellow agents to make sure they have their batons to confront Mr. Franklin. As Mr. Franklin attempted to park his car, the agents shouted expletive-laden commands at him as they moved toward the SUV. BPA 1 directed his fellow agent to break Mr. Franklin's window.[2] The two agents who approached Mr. Franklin's car drew their guns and pointed them at Mr. Franklin, prompting bystanders to beg agents to not shoot him. The agents continued to shout commands to Mr. Franklin, which he obeyed. Mr. Franklin complied and did not resist at all as the agents handcuffed and arrested him and placed him in the back of the minivan.

While in the minivan with Mr. Franklin after his arrest, BPA 1 tells Mr. Franklin that he gave them a "love tap" and "not much" damage happened.[3] In response to BPA 1's statement, Mr. Franklin responded that he didn't intend for the contact to happen. The BPAs did not provide any *Miranda* warnings to Mr. Franklin before speaking with him about the accident.

---

[2] The agent approached the car with his baton raised but did not break the window.
[3] BPA 1 later tells Homeland Security Investigators that there was no damage.

## ANALYSIS

Here, Mr. Franklin was initially seized when Border Patrol agents brake-checked his vehicle on an icy and narrow street in Southwest Minneapolis, forcing his SUV to stop when it hit their minivan. *See Scott v. Harris*, 550 U.S. 372, 381 (2007) ("A Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through mean intentionally applied."). Before this seizure, the agents did not have the requisite reasonable suspicion that Mr. Franklin had committed a crime. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968) (requiring reasonable suspicion for a stop that falls short of arrest).[4] Mr. Franklin was further seized when Border Patrol agents approached his vehicle while he was parking, with guns and batons drawn. The only additional information agents when approaching the vehicle was that Mr. Franklin's car had hit their minivan. Thus, this seizure was not based on reasonable suspicion of any criminal activity, and any observations of Mr. Franklin as the agents approached him with batons and guns drawn should be suppressed. *See United States v. Crews*, 445 U.S. 463, 470 (1963) (stating that exclusionary sanction applies to officer observations). Finally, agents violated Mr. Franklin's due process rights by their outrageous conduct, including brake-checking him on an icy and narrow neighborhood street, causing an accident, approaching Mr. Franklin with batons and gun drawn, forcing him from his vehicle at gun point, and unlawfully arresting him.

---

[4] To the extent that the government will argue that Mr. Franklin was violating Minnesota traffic laws, Mr. Franklin posits that Border Patrol agents purportedly enforcing immigration laws do not have the authority to enforce Minnesota state traffic laws. *See United States v. Brignoni-Ponce,* 422 U.S. 873, 884 (1975).

To the extent that the government intends to use Mr. Franklin's unwarned statement to Border Patrol agents while in the minivan as inculpatory evidence that his SUV hit the agent's unmarked minivan, Mr. Franklin also seeks to suppress that statement as it was obtained in violation of his Fifth Amendment rights against self-incrimination and the protections afforded to him by *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), as well as a fruit of the illegal seizure and arrest as discussed above.

Mr. Franklin requests an evidentiary hearing to further develop the factual record and requests that the officers responsible for his seizure, arrest, and unwarned statement testify at the motions hearing to establish grounds for their seizure of Mr. Franklin on January 13, 2026. He respectfully requests the opportunity to provide further briefing on this motion after the factual record is developed.

Dated: March 16, 2026                    Respectfully submitted,

*s/ Siri Carlson McDowell*

SIRI CARLSON MCDOWELL
Attorney ID No.  0401693
Attorney for Mr. Franklin
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

4