UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-mj-101 (JNE/DLM)

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSEPH FRANKLIN,

Defendant.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR OUTRAGEOUS GOVERNMENT CONDUCT**

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Zain Abid, Special Assistant United States Attorney, hereby submits its response in opposition to Defendant's Motion to Dismiss for Outrageous Government conduct (ECF No. 28). The Government opposes this motion for the reasons set forth below.

Mr. Franklin moves to dismiss the information, alleging the Government engaged in outrageous conduct in violation of the Fifth Amendment's Due Process clause (ECF. No. 28). The Government denies this allegation. The Government's challenged conduct in this case is not outrageous. Even following the Defendant's recitation of the facts, the Government's conduct in this case falls far below the extremely high standard required for dismissal for

outrageous conduct. The Government will further argue that the Defendant has failed to raise specific facts to obtain an evidentiary hearing.

**FACTS**

On January 13, 2026, Border Patrol Agents ("BPAs" or "agents"), including BPA 1 and BPA 2, were patrolling in a residential area in Minneapolis, Minnesota. Although the BPA vehicle did not have emergency lights or sirens, the agents wore Border Patrol uniforms, including agency-issued body armor and visible law enforcement markings.

While patrolling, BPAs observed several unidentified vehicles following the BPA vehicle at an extremely close distance. An individual, later identified as Joseph Franklin was driving one of the vehicles. Despite the agents' attempts to evade him, Mr. Franklin continued to tail the agents. The agents observed Mr. Franklin driving in an aggressive manner, likely to endanger the agents.

BPA 1 was sitting in the back seat of the BPA vehicle wearing a body-worn camera that captured the events. At first, Mr. Franklin's vehicle was behind a Toyota SUV, the vehicle directly tailing the BPA vehicle. Seconds later, Mr. Franklin swerved to the other side of the street, driving in the oncoming traffic lane. Mr. Franklin, then, passed the Toyota SUV to reach the BPAs' vehicle. Mr. Franklin, then, passed, the BPAs' vehicle while traveling into oncoming traffic. Mr. Franklin cut in front of the BPAs' vehicle seconds

before nearly causing a head-on collision with a vehicle driving towards him in the opposite direction. The BPA vehicle carrying multiple agents was adjacent to Mr. Franklin's vehicle when he almost caused a head on collision while driving the wrong way of traffic. While in front of the BPA vehicle, Mr. Franklin braked, causing agents to fear he was attempting to box the BPA vehicle between Mr. Franklin and the Toyota SUV. The agents made a left turn to evade Mr. Franklin's attempt to box the BPA vehicle. Immediately, thereafter, Mr. Franklin made a left turn, following the BPAs at an unsafe distance.

Approximately 10 seconds after both vehicles made a left turn onto a side street, Mr. Franklin's vehicle struck the BPAs' vehicle at the rear. BPA 1 and BPA 2 exited the patrol vehicle. Initially, Mr. Franklin appeared to reverse and drive away from the responding agents. BPA 1 instructed BPA 2 to break Mr. Franklin's window. Neither of the agents struck the windows as Mr. Franklin eventually complied with the agents' command to exit the vehicle.

## LEGAL STANDARD

Dismissal of a criminal case based on alleged outrageous government conduct is an extraordinary remedy that applies only in the rarest of circumstances. *See United States v. Combs,* 827 F.3d 790, 794 (8th Cir. 2016)

(citing *United States v. Russell,* 411 U.S. 423, 432 (1973) and *United States v. King,* 351 F.3d 859, 867 (8th Cir. 2003)). The Eighth Circuit has emphasized that this doctrine is "reserved for conduct that falls within the narrow band of the most intolerable government conduct." *King,* 351 F.3d at 867. Dismissal is appropriate only where law enforcement conduct violates "that fundamental fairness, shocking to the universal sense of justice, mandated by the Due Process Clause." *Combs,* 827 F.3d at 794 (citing *Russell,* 411 U.S. at 432). An outrageous government conduct defense is limited to the most intolerable government conduct and cannot be based upon conduct that is merely offensive. *United States v. Taylor*, CR 05-383 (DWF/JSM), 2006 WL 8444344 (D. Minn. Jan. 13, 2006), *report and recommendation adopted*, CR053831DWFJSM, 2006 WL 8444337 (D. Minn. Jan. 25, 2006), *aff'd,* 519 F.3d 832 (8th Cir. 2008) citing *United States v. Musslyn*, 865 F.2d 945 (8th Cir. 1989). A trial court shall hold an evidentiary hearing only when a defendant raises specific facts that raise a significant doubt about the propriety of the government's actions. *See United States v. Valona,* 834 F.2d 1334, 1340 (7th Cir. 1987).

This is a highly demanding standard. The Eighth Circuit has explained that although the doctrine exists, the level of misconduct required to justify dismissal is "quite high," and the government's conduct must truly "shock the conscience of the court." *King,* 351 F.3d at 867; see also *Combs,* 827 F.3d at

795 ("We are aware of only two reported court of appeals decisions—both from the 1970s—that have deemed the government's conduct so outrageous as to violate due process."); *United States v. Bugh,* 701 F.3d 888, 894 (8th Cir. 2012) (noting that dismissal is warranted only when government conduct falls within the "*narrow* band of the *most intolerable* government conduct") (emphasis added).

The outrageous conduct doctrine focuses on the nature of the government's investigative conduct. *United States v. Hunt,* 171 F.3d 1192, 1195 (8th Cir. 1999). The Eighth Circuit has rejected attempts to characterize standard investigative techniques as outrageous government conduct, recognizing that aggressive investigative tactics do not become unconstitutional merely because they provide an opportunity to commit a crime. *See Bugh,* 701 F.3d at 894 (finding that use of confidential informants is a permissible law enforcement technique); *Combs,* 827 F.3d at 795 (concluding that infiltration of criminal enterprises and participation in planned criminal activity are recognized investigative methods that generally do not violate due process).

Because dismissal is such a drastic remedy, the defendant bears a heavy burden. *King,* 351 F.3d at 867. The doctrine applies only to the most egregious and intolerable forms of government misconduct, not to routine investigative decisions or tactical judgments made during criminal investigations. The

government's conduct must be more than aggressive, persistent, or even questionable, it must be conduct that violates fundamental fairness and shocks the conscience before dismissal is warranted. *Bugh,* 701 F.3d at 894; King, 351 F.3d at 867; *Combs,* 827 F.3d at 795.

Courts find government conduct sufficiently outrageous only in extremely rare instances. *Combs,* 827 F.3d at 795. It is not enough for the government to create the conditions necessary for a crime to occur. For the government's role in an offense to shock the conscience, the government must reach a demonstrable level of outrageousness. *Id.* (citing *United States v Twigg,* 588 F.2d 373, 380 (3d Cir. 1978)). In *Combs,* an ATF agent presented a target of opportunity, hired the crew to commit the robbery and produced a getaway car for use in commission of the robbery. *Combs,* 827 F.3d at 793-795. The court in *Combs* cited *Greene v. United States,* saying that government conduct may shock the conscious when it involves "itself so directly and continuously *over such a long period of time* in the creation and maintenance of criminal operations, and yet [seeks to] prosecute its collaborators". (emphasis added) *Id.* (citing *Greene v United States,* 454 F.2d 783, 787 (9th Cir. 1971)).

However, the court reasoned that even in this situation where an agent participates in the planning of a crime, and provides resources for the crime, it does not exceed the level of permissible law enforcement tradition. *Combs*, 827

F.3d at 795. Accordingly, the court found that the ATF's operation was not so shocking to the universal sense of justice that they violated the fundamental fairness required by the Due Process Clause. *Id.* at 795, 796.

Furthermore, as seen in *Hunt*, even when the government supplies material support which is essential to the commission of a crime, courts still routinely decline to find outrageous government conduct. *See Hunt*, 171 F.3d 1192 at 1195. In *Hunt*, the government provided 2,088 grams of ephedrine, a chemical necessary to produce methamphetamine, as a part of an undercover operation to prosecute the defendant for the production of methamphetamine. *Id.* The court reasoned that law enforcement may go "a long way in concert with the individual in question without being deemed to have acted so outrageously as to violate due process". *Id.* citing *United States v. Kummer,* 15 F.3d 1455, 1460 (8th Cir. 1994). Accordingly, the court ruled that the government's conduct was not sufficiently outrageous to shock the conscience. *Id.*

These cases illustrate that government conduct must be truly shocking to violate a defendant's Due Process rights. It is not enough that the government plays a role in the commission of an offense or even creates the conditions necessary to commit it.

## ARGUMENT

In this case, Mr. Franklin fails to raise specific facts that rise to a prima facie outrageous government conduct claim. After observing Mr. Franklin driving in a manner likely to endanger them and impede their patrolling operations, BPAs developed reasonable suspicion to stop Mr. Franklin. In addition, the agents developed reasonable suspicion to stop Mr. Franklin after he struck the BPA vehicle in the rear. The BPAs, at no point in this short sequence of events, engaged in direct and continuous conduct that created Mr. Franklin's crime. While agents may have engaged in minimally aggressive tactics to command Mr. Franklin to exit his vehicle, aggressive law enforcement tactics do not rise to outrageous government conduct.

Finally, the Defendant notes that the Department of Homeland Security made a post on February 4, 2026 containing an image of Mr. Franklin. The accompanying photograph indicates that Mr. Franklin was arrested as the caption states, "ARRESTED: ASSAULT (RAMMING)." The Government, furthermore, contends that this conduct does not rise to the level of outrageousness. While this conduct may merely offend the Defendant, this is not a basis to obtain a dismissal under the outrageous conduct doctrine.

This case simply does not contain the rare "conscience shocking" government conduct the Eighth Circuit has found intolerable. While agents may have engaged in minimally aggressive or conduct offensive to the Defendant, this does not rise to outrageous government conduct. In this case,

Mr. Franklin drove parallel to agents in the wrong way of traffic and nearly caused a collision. Subsequently, he struck the rear of a vehicle containing federal law enforcement agents. Here, the government played no role in any criminal enterprise nor did it have any direct or continuous involvement in Mr. Franklin's alleged criminal conduct. Dismissal of case based on alleged outrageous government conduct is an extraordinary remedy that applies only in the rarest of circumstances. This is not one of those extremely rare cases. As such, the Court should deny Mr. Franklin's motion.

## CONCLUSION.

Based on the foregoing, the United States respectfully requests that the Court deny Mr. Franklin's Motion. Mr. Franklin has not raised sufficiently raised specific facts to raise a significant doubt about the propriety of the Government's actions. As such, the Government respectfully asks the Court deny any evidentiary hearing.

Dated: March 30, 2026

Respectfully Submitted,

DANIEL N. ROSEN
United States Attorney

*s/Zain Abid*

BY: Zain Abid

Special Assistant U.S. Attorney